IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANNETTE WHITE, | * | |
| Plaintiff, | * | |
| vs. | * | Case No. 2:08-cv-00644-MHT-CSC |
| PI KAPPA PHI FRATERNITY, a South Carolina corporation, | * | |
| | * | |
| PI KAPPA PHI GAMMA GAMMA ALUMNI HOUSING CORPORATION, INC., an Alabama corporation, | * | |
| | * | |
| Defendants. | * | |

**AMENDED COMPLAINT**

COMES NOW the Plaintiff Annette White and hereby amends her Complaint to add as an additional party Defendant the Pi Kappa Phi Gamma Gamma Alumni Housing Corporation, Inc., an Alabama corporation, and further amends the Complaint as follows:

JURISDICTION

1. Jurisdiction exists in this court by virtue of a previously-filed Removal Petition, removing the original Complaint as amended from the Circuit Court of Pike County, Alabama to this U.S. District Court on August 8, 2008. Plaintiff filed a "Consent to Removal" on August 12, 2008.

PARTIES-VENUE

2. Plaintiff Annette White, was, at all times relevant hereto, a resident of Pike County, Alabama, and is of sound mind and body. For the past three and one-half years and up to the date of the filing of this lawsuit, she was a resident of 700 E. Madison Street, No. 5, Troy, Alabama, 36081. Due to circumstances described in this Complaint, she has been forced to move away from that location and currently resides in Montgomery County, Alabama.

3. The Defendant Pi Kappa Phi Fraternity (hereinafter "Fraternity") is a national

1

fraternity, incorporated in South Carolina. It has chartered or authorized local chapters, including the local chapter located at 706 East Madison Street, Troy, Alabama, operating under the legal name of "Pi Kappa Phi Gamma Gamma Alumni Housing Corporation, Inc."

4. The Defendant Pi Kappa Phi Gamma Gamma Alumni Housing Corporation, Inc., an Alabama corporation, is the local Troy University chapter of the national fraternity Pi Kappa Phi. The local chapter is chartered by, and authorized by, the national fraternity, thus deriving its authority to act, or refusal to act, from said national fraternity. The local chapter would not call itself Pi Kappa Phi, or act as Pi Kappa Phi, without enjoying the express approval to do so of the national body, namely the Pi Kappa Phi Fraternity, a South Carolina corporation.

5. Hereinafter, the national fraternity, when it is referred to separately, will be called **"Pi Kappa Phi**." The local chapter, when referred to separately, will be called "**Gamma Gamma**." When the two entities are referred to jointly, as they often will be in this complaint, they are referred to jointly as "**The Fraternity.**"

6. The acts and omissions of the Defendants took place in Pike County, Alabama and involved violations of State law. All exhibits attached to the original Complaint filed in the Circuit Court of Pike County, Alabama, are hereby incorporated by reference into this Amended Complaint, without further attachment to this Complaint. Said exhibits are on file with this Court.

FACTS GIVING RISE TO THE COMPLAINT

7. On or about March, 2005, the Plaintiff moved into her home at 700 East Madison Street, No. 5, Troy, Alabama. For the next year and a half, Plaintiff enjoyed the peace and quiet of her residential neighborhood, and had no problems with her neighbors.

8. On or about August, 2006, the Plaintiff first noticed a large sign reflecting the future site of a fraternity house. However, there was no directions or language indicating where someone could protest the construction or existence of the building.

9. The Fraternity proceeded to promptly build its fraternity house at 706 East Madison Street, Troy, Alabama, which is only 25-50 feet from Plaintiff's residence, and said house was completely finished by September, 2006.

10. Shortly thereafter, said fraternity house became inhabited by fraternity members only,

all of whom, on information and belief, were students at Troy University and members of The Fraternity.

11. Starting on September 21, 2006, numerous instances of loud noise pollution began emanating from The Fraternity's house, such that the Plaintiff felt compelled to call, and did call, the Troy Police Department to complain about said loud noise and trespass onto her property. The Troy police responded and issued a citation to James Hugett Noble, Jr., a resident and member of the fraternity. Said citation resulted in a guilty plea, and a $50 fine, together with a fee of $137 in court costs being issued against Mr. Noble. Unfortunately, The Fraternity did not learn, and loud music continued.

12. On September 27, 2006, after making several complaints, Plaintiff White met with Troy University campus police chief, Rod Anderson, and Plaintiff was informed that the problem was not a problem under campus police jurisdiction, since The Fraternity's house was not located on the campus of Troy University.

13. On September 28, 2006, Plaintiff White met with Captain Fannin of the Troy Police Department about the continued noise violations. Captain Fannin replied that the police chief was aware of the problem and had advised all officers that there would be no more warnings to The Fraternity. Instead, there would be citations for the continued violations.

14. Also on September 28, 2008, Plaintiff met with The Fraternity's Chapter Advisor, namely Dean Herb Reeves. Dean Reeves informed Plaintiff that he was going to meet with The Fraternity and its advisors to discuss the problem. The Dean agreed with Plaintiff that no one should be parking in Plaintiff's parking space, nor should anyone from The Fraternity be trespassing upon Plaintiff's property. On the same day, Plaintiff spoke with Adams Realty (her landlord) about the trespass issue, seeking its help.

15. Unfortunately, on September 28, 2006, The Fraternity again began engaging in loud music at its 706 East Madison Street, Troy, Alabama location, such that Plaintiff felt it necessary to call, and did call, the Troy Police Department, which arrived and cited student Bart T. Wallace, as a representative of The Fraternity, for violating the noise ordinance (music from a residence). Subsequently, Mr. Wallace pled guilty and was fined $50, together with court costs of $137. Unfortunately, the loud noise continued.

16. Undeterred, The Fraternity continued to violate the noise ordinance, such that on

October 10, 2006, the Troy Police Department came out again, and issued a warrant against Patrick M. Laney, as a member of, and representative of, The Fraternity, in violation of the noise ordinance. That citation also resulted in a plea of guilty, with a $50 fine and $137 in court costs.

17. Unbowed, the Fraternity continued to violate the noise ordinance, such that on October 14, 2006, the Troy Police Department was once again called, and again issued a citation and arrest warrant against Patrick M. Laney. This, too, resulted in plea of guilty, with a $50 fine and $137 in court costs against Mr. Laney.

18. Unfortunately, The Fraternity's loud noise-making continued, and, on October 15, 2006, the Troy Police Department was called again. Again, a citation was issued to Patrick M. Laney, as a member of, and representative of, The Fraternity for violating the noise ordinance. That citation also resulted in a guilty plea, with a $50 fine and $137 in court costs. Unfortunately, the noise continued.

19. Thus, on November 5, 2006, while The Fraternity was again engaging in loud noise at its location, the Plaintiff called, as a matter of necessity, the Troy Police Department again. The Troy police arrived, and this time cited Adam Hughes, as a member of, and representative of, The Fraternity, for violating the noise ordinance. Subsequently, Mr. Hughes pled guilty and was fined $50, together with court costs of $137. However, the loud noise continued to emanate from The Fraternity's house.

20. Not learning from past citations and fines, on November 15, 2006, The Fraternity engaged again in loud noise, violating the City's noise ordinance. The Troy police were called, and this time Charles Hudson, as a member of, and representative of, The Fraternity, was issued a citation for violating the noise ordinance. Subsequently, Mr. Hudson pled guilty and was fined $50, together with court costs of $137. However, the loud noise continued from The Fraternity house.

21. Thus, on November 17, 2006, because The Fraternity continued to make loud noise and music, the Plaintiff again called the Troy Police Department. The Troy police arrived, and this time cited James H. Noble, Jr., as a member of, and representative of, The Fraternity, for violating the noise ordinance. The party was shut down by the Troy police on a second call by Plaintiff at 1:45 a.m., which apparently angered the party-goers at The Fraternity's house.

22. Also on November 17, 2006, following the citation mentioned above in paragraph

4

21, at approximately 2:00 a.m., the angered party-goers, most of whom Plaintiff avers were members of The Fraternity, set off about 50 firecrackers at Plaintiff's back bedroom window ledge, while Plaintiff attempted to sleep. At 2:35 a.m., Plaintiff called the Troy police again. This time, the police wrote a citation to The Fraternity for criminal mischief. However, this citation apparently had no effect whatsoever on The Fraternity.

23. In late November, 2006, Plaintiff called upon the Chancellor of the Troy University, namely Jack Hawkins, to speak with him about the problem. However, Plaintiff was not allowed to speak with Chancellor Hawkins. A few days later, Vice-Chancellor John Schmidt called Plaintiff White. After hearing her complaints, Vice-Chancellor Schmidt advised Plaintiff he would look into it and get back to her. However, Plaintiff never heard anything back from Mr. Schmidt.

24. In January, 2007, The Fraternity's president and another member of The Fraternity came to Plaintiff's house and requested that Plaintiff call a number they gave her if she had a problem with the noise. This worked for a short time; however, Plaintiff continued to be bothered by the loud noise, which disturbed her sleep, even when she called The Fraternity to request that it cease its noise, because it was bothering her.

25. From May through August, 2007, while students at Troy University were away for the summer, Plaintiff lived in relative peace.

26. When the school year began again with the fall semester at Troy University in August, 2007, the noise problems started again. The Plaintiff called the police, but this time, the Troy police stopped writing their reports. The Fraternity's members were only warned from August through November, 2007.

27. On November 17, 2007, with the noise so loudly emanating from The Fraternity, the Plaintiff called the Troy Police Department two times in one day to complain about a violation of the noise ordinance. Both incidents were written up by Troy police, the first with a citation issued to Wesley George Overton, and the second a citation issued to Joseph Allen Redick, both members of The Fraternity. Both citations resulted in exactly the same guilty pleas, fines and court costs as those described above.

28. At approximately 2:20 a.m. on November 17, 2006, as The Fraternity's members and party-goers trespassed through Plaintiff's property to leave the party, one of them struck the

5

hood of Plaintiff's daughter's car with his fist. As the person drove away, Plaintiff got the license number of the vehicle. The person was an Auburn, Alabama resident. However, upon a complaint by the Plaintiff, the police simply wrote up a report, got the witness information, but never did anything about the incident.

29. On November 19, 2007, The Fraternity's new Fraternity Chapter Advisor, namely a Mr. Will Hickman, called Plaintiff on the telephone about the continued noise problem. Mr. Hickman told Plaintiff that a fraternity would always have parties, and it would be in Plaintiff's best interests to "just move."

30. That same day, Plaintiff contacted Troy Mayor Jimmy Lunsford, who agreed that there must be a greater punishment within the law for the repeated violations. The Mayor said he would research the situation and get back with Plaintiff. However, Plaintiff never heard back from Troy Mayor Lunsford. Plaintiff tried to contact Troy Chancellor Hawkins again, but was again informed by the secretary that Chancellor Hawkins was not available.

31. On November 20, 2007, at approximately 1:45 a.m., a loud burst noise awakened Plaintiff White again. The police were called again, and The Fraternity was again cited by the police. However, the same lame results as before followed.

32. On or about December, 2007, Plaintiff was forced to call the Troy police again about the noise violations. This time, Plaintiff White went to the police station and signed a warrant against The Fraternity's president. The case was set down for a hearing on January 23, 2008. However, at that time, Troy Municipal Judge Cervera informed the Plaintiff that she could not sign a warrant on The Fraternity's president. When asked by the Plaintiff who she should sign a warrant against, Judge Cervera replied that he did not know, but would get back to her. However, Judge Cervera never got back to the Plaintiff with said information, or any other information about her case.

33. The noise continued emanating from The Fraternity's house in January and February, 2008. However, this time, the Troy police refused to write reports and would only write citations to the offenders.

34. On March 20, 2008, a citation was issued to Shawn J. Scott, as a representative of The Fraternity, and as before, he was caused to pay a $50 fine and $137 in court costs. Plaintiff called and spoke with Troy Police Chief Anthony Etheridge about the continual noise problem.

Mr. Etheridge said, "The police were doing all they could do."

35. On March 26, 2008, the noise continued, and Plaintiff called the Troy police at 1:55 a.m., March 27, 2008. Wesley George Overton, as member and representative of The Fraternity was cited, and the party was shut down on a second call to police.

36. At some time between March 27, 2008 and April 2, 2008, Plaintiff's automobile was damaged by someone who pulled off the chrome trim on the rear door. Upon information and belief, Plaintiff avers that, under the circumstances, the damage was caused by someone associated with The Fraternity, who was unhappy with her complaints against The Fraternity.

37. On March 30, 2008, Plaintiff wrote a letter to the national fraternity office of Defendant Pi Kappa Phi about the problems, asserting it was responsible for the actions of its members. The national fraternity office wrote back, informing Plaintiff that it was going to speak to certain advisors and alumni about the problem.

38. On April 8, 2008, Plaintiff attended a City Council meeting and discussed her problems with the Council. Councilman John Witherington asked the Troy Police Chief whether or not The Fraternity had applied for any outside party permits, whereupon the police chief replied that The Fraternity had not. The Mayor was asked to respond, but chose to remain silent about the entire matter.

39. Again, on April 26 and April 30, 2008, the noise continued from The Fraternity's house and citations were issued, namely CS#0804-3990 and CS#0804-4613, with the same poor results, a small fine and court costs.

40. Plaintiff avers that on many other occasions, she suffered through sleepless nights when The Fraternity played loud music, and through perseverence and long-suffering, she endured the noise pollution without calling the police, The Fraternity or any other number.

41. Meanwhile, as Plaintiff has barely endured the constant harassment and insomnia created by the continual loud noise pollution created by The Fraternity, she has developed numerous physical and mental health problems as a result thereof.

## CAUSES OF ACTION
## COUNT ONE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

42. Plaintiff hereby repeats, realleges and incorporates by reference the preceding

7

paragraphs 1-41 of the Amended Complaint and further avers that The Fraternity, by its repeated infliction of loud noise upon the Plaintiff during the past two years, has created an environment for her so painful that no reasonable person in his/her right mind could be expected to endure the same.

43. Plaintiff further avers that this set of facts, as set forth in this complaint, rises to the level of the tort of intentional infliction of emotional distress, as the same is defined in case law.

44. Plaintiff further avers that she has been so damaged physically, mentally and emotionally that she has not only had to receive medical attention, but has also had to leave her home and relocate as of May 31, 2008.

45. Plaintiff avers that the facts and circumstances of this case are so egregious that an award of punitive damages is appropriate.

### PRAYER FOR RELIEF

WHEREFORE, premises considered, the Plaintiff prays that this Honorable Court will award her such compensatory and punitive damages as a judge and jury deem just and appropriate under the facts and circumstances of this case.

### COUNT TWO: PRIVATE NUISANCE

46. Plaintiff hereby repeats, realleges and incorporates by reference paragraphs 1-45 of the Amended Complaint and further avers that The Fraternity created a frequent loud noise level in a residential neighborhood, which substantially and unreasonably interfered with the Plaintiff's use and enjoyment of her residence in said neighborhood. Such an intolerable level of noise created by The Fraternity significantly interfered with the Plaintiff's ordinary comfort of human existence.

47. Plaintiff avers that The Fraternity's actions have constituted a private nuisance, and as a proximate result of the same, Plaintiff has been damaged and injured mentally, emotionally and physically, as hereinbefore set forth.

### PRAYER FOR RELIEF

WHEREFORE, premises considered, the Plaintiff prays that this Honorable Court will award her such compensatory and punitive damages as a judge and jury deem just and appropriate under the facts and circumstances of this case.

## COUNT THREE: INVASION OF RIGHT TO PRIVACY

48. Plaintiff hereby repeats, realleges and incorporates by reference the preceding paragraphs 1-47 of the complaint and further avers that The Fraternity, by its repeated intentional infliction of loud noise upon the Plaintiff during the past two years, has invaded Plaintiff's right to privacy and, as such, created an environment for her so painful that no reasonable person in his/her right mind could be expected to endure the same.

49. Plaintiff avers that she is entitled to a right of privacy in her home, and that such right carries with it the right to be free from noise pollution and noise harassment.

50. Plaintiff further avers that The Fraternity deliberately, wantonly, and with malice aforethought, continued to subject the Plaintiff to gross and incessant noise pollution, which no reasonable person can be expected to tolerate for a period of two years.

51. Plaintiff avers that she has suffered mental and emotional anguish and physical damage as a result of The Fraternity's wrongful invasion of her right to privacy, and will continue to so suffer in the foreseeable future.

52. Plaintiff avers that the facts and circumstances of this case are such that an award of punitive damages is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, the Plaintiff prays that this Honorable Court will award her such compensatory and punitive damages as a judge and jury deem just and appropriate under the facts and circumstances of this case.

## COUNT THREE: NEGLIGENCE

53. Plaintiff hereby repeats, realleges and incorporates by reference the preceding paragraphs 1-52 of the complaint and further avers that The Fraternity was negligent in not maintaining a minimum noise level for the Plaintiff's quiet enjoyment.

54. Plaintiff avers that The Fraternity, as a co-resident of a neighborhood with Plaintiff, and at a distance of only 25-50 feet from Plaintiff's residence, had a duty to keep its noise level at a minimum, so as not to disturb the peace and quiet of the Plaintiff and other residents of the neighborhood.

55. Plaintiff avers that The Fraternity has negligently breached said duty, and as a proximate result of the same, Plaintiff has been damaged and injured mentally and physically. Plaintiff avers that she has suffered mental and physical damage as a result of The Fraternity's negligence.

56. Plaintiff avers that the facts and circumstances of this case are such that an award of punitive damages is appropriate.

### PRAYER FOR RELIEF

WHEREFORE, premises considered, the Plaintiff prays that this Honorable Court will award her such compensatory and punitive damages as a judge and jury deem just and appropriate under the facts and circumstances of this case.

### COUNT FIVE: WANTONNESS

57. Plaintiff hereby repeats, realleges and incorporates by reference the preceding paragraphs 1-56 of the complaint and further avers that The Fraternity was wanton in not maintaining a minimum noise level suitable for the Plaintiff's quiet enjoyment of her home and habitat.

58. Plaintiff avers that The Fraternity, as a co-resident of a neighborhood with Plaintiff, and at a distance of only 25-50 feet from Plaintiff's residence, had a duty to keep its noise level at a minimum, so as not to disturb the peace and quiet of the Plaintiff and other residents of the neighborhood.

59. Plaintiff avers that The Fraternity has wantonly breached said duty, and as a proximate result of the same, Plaintiff has been damaged and injured mentally and physically. Plaintiff avers that she has suffered mental and physical damage as a result of The Fraternity's wantonness.

60. Plaintiff avers that the facts and circumstances of this case are such that an award of punitive damages is appropriate.

### PRAYER FOR RELIEF

WHEREFORE, premises considered, the Plaintiff prays that this Honorable Court will award her such punitive damages as a judge and jury deem just and appropriate under the facts and circumstances of this case.

Respectfully submitted,

Annette White, Plaintiff

OF COUNSEL:  By /s/ Julian McPhillips
McPHILLIPS, SHINBAUM, LLP  Julian McPhillips
516 S. Perry St.  Attorney for Plaintiff
P.O. Box 64
Montgomery, AL 36101-0064
(334) 262-1911

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing, via U.S. Mail, postage prepaid, upon Mr. Michael H. Gregory and Mr. J. Mitchell Frost, Ferguson, Frost & Dodson, LLP, P.O. Box 430189, Birmingham, AL 35243-0189, on this the 21st day of October, 2008.

/s/ Julian L. McPhillips, Jr.
Julian L. McPhillips, Jr. (MCP004)

**NOTE: This Amended Complaint and Motion to Amend will be served along with the Court's order on Keith Maddox, 805 Orion St., Troy, AL 36081, registered agent for Pi Kappa Phi-Gamma Gamma Alumni Housing Corporation, Inc.**